May it please the court, the appellant Silverstar raises a number of issues in its briefing in this case. I'm going to focus my argument on the punitive damages issue. We have addressed the merits and why judgment as a matter of law should have been granted. We urge reversal and dismissal on that basis but given the significance of the legal issues and particularly the financial issues to my client the argument will be focused on punitive damages. The jury's verdict was grossly excessive on punitive damages. It was fueled by passion and prejudice. Now the district court clearly reached that conclusion. If the district court did not reach that conclusion that it was grossly excessive then it would not have reduced the punitive damage verdict by $5.3 million. Part of the difficulty with the district court's opinion is that it never comes out and says that. Judge Holmes doesn't say I find this and violate due process for these reasons. The focus of the district court's opinion is on why he believes punitive damages were justified in that case. Well isn't he in effect putting a probability on the potential because he does make findings. He says there's an undoubted potential for substantial physical harm. He says that the potential for physical disregard and there's particular reprehensibility and he does describe the, he's referring to the evidence presented at trial, he says the physical harm that could have resulted would have been substantial. Is he in effect putting a probability on the potential harm which the Supreme Court says can be done? He is not. The standard for the potential harm argument that we've kind of framed in the briefing is whether the harm is likely to occur and I submit likely to occur from the intended conduct of the defendant and none of that is present here. Judge Holmes does not attempt to quantify the harm, establish what the likelihood of it is. All he does is refer to the possibility of substantial physical harm and I think that a review of the record shows that he is wrong on that even but certainly he never reaches the issue of the likelihood of potential harm to justify a departure from what we know to be the objective standard for constitutional review of punitive damages. Wasn't there, there was expert testimony that suggested that if, that this part could lead to fumes within the cabin of the car as well as the possibility of igniting, igniting some parts within the car and potentially causing a fire. Are you saying that those are not present because you said he was wrong, the district court was wrong about the potential for harm? Yes, I am, your honor. Okay, so what do we do with the expert testimony? We got expert testimony that supports what the district court did. We've got expert testimony that a carbon monoxide leak or an exhaust leak can under some circumstances leak into the cabin of a car. There was no testimony that that risk was present in this case. It was presented as a theoretical possibility of what exhaust leaks may do at some point in the future. But with respect to this car and the evidence presented, Mr. Easton never testifies that it posed a significant risk at that point or at any time in the foreseeable future or what the likelihood would be. Was there any counter evidence that said from, from your client that said, well, there's, with this particular car, there's no way any of those bad things could have happened? No, because my client had no knowledge of the potential for that risk. So then don't we, don't we have to take that expert testimony at face value without any counter evidence from your client? Yes, I agree. You take the expert testimony at face value. Yes, your honor. Okay. The expert testimony doesn't chin the bar, if you will, to establish that there was a significant risk of harm in this case, in this car. And you don't think the district court could draw that inference from the expert testimony given the lack of other evidence in the case? I don't want to belabor this point, but I don't think this is your strongest argument. I agree with that. Yeah. Yeah. I mean, the expert testimony is there and it is what it is. And I'm not asking to go behind that expert testimony and refute it. Okay. I think the strongest point on this issue is what was the defendant's knowledge of potential risk? Was it ever communicated to the defendant that that was a risk? The answer is no. There are only three witnesses on this point, neighbors, Sloan and Guest. Neighbors testified that he informed Mr. Sloan that the exhaust leak was an issue that needed to be fixed. He was specifically asked, did you communicate to Mr. Sloan why it needed to be fixed? He answered, I don't know. No. He was asked that several times during the direct examination. Mr. Sloan testified he had no knowledge that that was a potential risk of harm. Well, the district court addresses that. He says the jury clearly found Sloan's testimony not credible. And the next sentence says, the record supports an inference that Silverstar, and more particularly Sloan, knew of the fuel leak, or that he recklessly disregarded obvious indicators of the problem. This behavior is particularly reprehensible given the potential dangers to the safety of, is it a deli you say? Is it a deli? A deli, yes. Thank you. And his passengers. Isn't that enough? Here's why not. First of all, the focus of the district court on the gasoline leak, let me explain that for just a moment, and that the jury could have concluded that Mr. Sloan was not credible on the gasoline leak. You've got to do a de novo review of these guideposts, of the reprehensible guideposts, and so that necessarily includes an evaluation of the record evidence to see if the reprehensible, reprehensibility guidepost is met. There's no evidence, of course, that he was informed of the gasoline leak. The jury awarded compensatory damages for fraud only with respect to the cost of the repair of the exhaust. For the cost of the repair of the gas leak, the jury's award did not Nothing you can conclude that the jury decided based on this record evidence that Mr. Sloan was aware of a gasoline leak when all of the evidence is, in fact, to the contrary, and the jury's compensatory damage award does not support that they considered that a fraudulent misrepresentation. So the district court clearly got that piece of it wrong. And if you conduct your de novo review of constitutionality and evaluate that guidepost, it clearly is not sustained. What about, and again, I'm relying on the district court, so feel free to tell me your counterpoint. The district court clearly says a simple test drive would have disclosed the fuel leak, he says other things. And Sloan frequently drove this car, and the last one to drive it, before shipping it away, and so he thinks the jury says that he knew about it then. But the record evidence is to the contrary. Mr. Easton, the expert, expressly testified that the fuel leak would not have been present at the time that Boardwalk conducted its inspection in October of 2016, and he testified that based on the mileage reading, it was not enough for anyone to have evaluated that.  Well, the district court's relying on Easton, too. Easton represented that a simple test drive would have disclosed many of the car's issues, especially the fuel leak. Is that true or false? I think that's incorrect, based on Mr. Easton's testimony. Thank you. Yes. So you seem to be arguing, I think, for no punitive damages, because if I'm hearing correctly, you're saying everything the district court relied on is wrong, or almost everything the district court relied on is wrong. Am I characterizing your argument today correctly? No, you are not. Okay. I have not raised on appeal that there should have been no award of punitive damages. Okay. The jury found fraud. Under Arkansas law, fraud can't support an award of punitive damages. I'm arguing that a de novo review of the record requires a reduction of the punitive damage award, and the judge's review of the record did not properly take into account the evidence before. If you're going to determine whether the conduct was reprehensible, you've got to properly evaluate the record evidence, and I don't think the district judge did. What about the, you know, I frankly think your strongest argument is based on the cases in the circuit, and are there cases that are particularly on point to this case that you can point to that would provide a good marker for how we should approach the issue in this case? There are three. One is Andrasek versus Hoffman, and of course in that case, the reduction came down from ten to one to a four to one ratio with the most reprehensible conduct you can possibly imagine. The other is Wallace versus DTG operations and Quickly versus Winter, which brought punitive damages within a range of a small compensatory award for economic loss only, and the court was very clear in those cases that the fact that the harm was only economic and the economic loss was small, $13,000 in one case, $20,000 in the other, is not a justification for a high award of punitive damages. So if you take the court's decision in Andrasek versus Hoffman, keeping it within the single digit ratio and the preferred four to one ratio, then the fact that Mr. Adeli's losses were purely economic and only amounted to $18,000, although the jury awarded slightly over $20,000, does not justify a departure from the four to one ratio, which the Supreme Court said is what the constitutional standard should be. Suppose we leave the claims alone. I know you're resting on your briefs and I don't want to get into them here, but suppose just if we have incidental damages and we have compensatory damages, do we base it on both of those things in terms of the ratio? In your view, is it four to one from the total between or just... Okay, tell me why it should just be compensatory. Because the only compensatory damages for fraud, only fraud can support the punitive damage award. Okay. Breach of warranty cannot, deceptive trade practice cannot. The compensatory damages were awarded for fraud and that's the $6,800 jury verdict. That is the conduct which the jury concluded justified punitive damages. It's that fraud verdict. Defendant is not on any kind of notice in conducting its business that it is subjected to a punitive damage award for a fraud. It's not permitted by law. And accordingly, the notice provision under the due process clause requires you to compare the verdict amount for the compensatory damages, which are supporting a punitive damage award case. Well, and here's the problem I'm having with that. So I know we reviewed this at some length, and on the fraud claim, I understand the district court instructed the jury that under the Arkansas Uniform Commercial Code, the incidental damages are also available for a fraud type claim. And so if those remain, if you have a fraud type claim and you can get incidental damages, then shouldn't it be based on the incidental damages as well, even if the district court instructed the jury incorrectly? No, the district court instructed the jury, if you find for fraud, then you can award punitive damages, but only if you find for fraud. And that was a correct statement of Arkansas law. I'm not sure you're answering my question because you're going back to the warranty. My point is, is that you could have gotten them for fraud under Arkansas law. And the district court instructed the jury that incidental damages were not available for a fraud type claim. So if the incidental damages can legally arise out of the fraud claim, shouldn't they be included in the punitive damages calculation too? No, because the jury didn't award them in this case, Your Honor. Didn't award the incidental damages for the fraud claim? That's correct. I'm not sure you're right about that because I think the damages would be the same under either one of them, but proceed. I think that's what the judge's instructions were. And you're in your rebuttal as you're aware. I'll save my final one plus minute for rebuttal. Thank you very much. Certainly so. Mr. Taylor. Thank you, and may it please the court. Jonathan Taylor for the plaintiff, Hamid Adeli, and I too, like my friend on the other side, will be focusing on punitive damages this morning. And I want to begin just by taking on the other side's contention, which you just heard, that their main defense was that there was no knowledge of the potential risk. And if I might, I just would like to focus briefly on some of the evidence that was presented at trial. So the trial revealed that Silver Star represented to Adeli that all the repairs had been made, even though its own mechanic at Boardwalk told Michael Sloan that the car had a craft exhaust header that, quote, was defective at the time he examined the car, which he said was an obvious need that needs to be fixed on this visit. Boardwalk's CEO testified that a cracked header is a needed repair because it poses serious safety concerns, that he has never sold and would never sell a car with a cracked header, and that these issues, quote, were communicated to Michael Sloan. That's at Appendix 337 to 339. And the only expert in the case, Joe Easton, likewise testified that this is a needed repair because it's an obvious safety concern. And at trial, Silver Star, and I think this is an important point, did not dispute anywhere, and this is a point that you made, Judge Strauss, that the evidence, he didn't dispute the evidence showing that a cracked exhaust header, at least in the abstract, poses a significant safety concern, nor did Sloan contend that he was unaware of this fact or deny that Boardwalk, as he put it, explained to me what needed to be done for the car to be safe to drive. Instead, he said that the only reason he didn't make the repair was that, quote, I was told there was no crack in the exhaust headers. That's at the Appendix 452. The jury plainly found otherwise. As the district court explained, and Judge Benton, you noted this, the jury, quote, clearly found that his testimony was not credible. It found Silver Star liable for fraud, found that the fraud was established by clear and convincing proof, which is the standard under Arkansas law, and awarded punitive damages in an amount that captures the grave potential harm to Adeli, harm that could have easily exceeded the punitive damages award, yielding a negative ratio. On appeal, Silver Star doesn't challenge the fairness of the trial or make any other procedural objection, doesn't challenge the jury's decision to award punitive damages, didn't challenge it in its Rule 50B motion, nor does it contend, at least until this morning, that the jury was inflamed by passion. I'll just note parenthetically, I believe my friend began his argument by saying that the district court found that the jury was motivated by passion or inflamed by passion. It actually found the opposite. I think you'll find that in the court's opinion. Well, I think to be fair, I think that's an inference based on the fact that he reduced the punitive damages by over 90%. I think he found that there was no evidence in the record showing that the jury was inflamed by passion, but he grounded his opinion, and the reason he reduced it by that number, as you point out, in the fact that he thought it was grossly excessive in relation to the actual harm that was suffered. Before you're done with your time, please address our line of cases that you're aware of. We say awards in excess of 10 to 1 cannot stand. I know there are qualifications. And then there's Ondersek saying 4 to 1 is about right, and there's even a table, as you probably know, in Ondersek setting out all of the cases that we could find, the court could find at that time. And so please address the simple problem of such a high ratio. We don't take issue with anything this court said in Ondersek. It's a finally done opinion. And I think we just dispute how you calculate the ratio. In our view, this is not a 227 to 1 ratio case. This is something more like 2 to 1, or 1 to 1, or a negative ratio, just as the Supreme Court said in TXO. And that's because the denominator is actual or potential harm, so long as that potential harm is reasonably foreseeable. And so as the district court found, the potential harm in this case was substantial. And I think you could measure it in the millions, not the thousands of dollars. And if that potential harm had manifested itself- Well, shouldn't the potential be a probability? It shouldn't be the sum. The sum is the big thing. And of course, there are cases where you can say, you know, it's a trillion dollars possible damages, but the chances of it are an infinitesimal part of 1%. So shouldn't the focus be on the probability? I don't think so. I think the focus should be on whether it's reasonably foreseeable. If it's not reasonably foreseeable, then the defendant didn't have fair notice that this type of penalty could result from a certain course of misconduct. The probability of whether it's reasonably foreseeable? In some ways, there's got to be a probability in here somewhere. Well, no, I don't think that's quite right. And because I think if so long as the potential harm is reasonably foreseeable and the defendant is on notice, then I think the state has an interest in deterring and punishing conduct that could give rise to grave circumstances. Even if the probability of it is extremely low? Well, it's the same reason the state has an interest in punishing DUIs, for example. The probability might only be 2% or 0.2% or something lower than that that you might get in a fatal car accident, but that doesn't diminish the state's significant interest in deterring and punishing that conduct. Well, wait. You've changed the state from a civil case about damages. I don't get that. The drunken driver can run into a family and kill a family. Okay. So now we're back talking about this. So we're back talking about the probability of that happening, right? Well, the reason I'm focusing on the state, and this is something that the Supreme Court's cases in this area have focused on as well, is that what the jury is doing here is it's vindicating the state of Arkansas's obvious interest in deterring and punishing this conduct. It's a different inquiry than awarding compensatory damages. This is designed to punish and deter. But see, here's another problem that I think Judge Benton's kind of getting at, which is the potential harm isn't even quantified here. There's nothing in the record that says, if all of these horrible things would have happened, here would have been the damages, right? All we have is the compensatory and the incidental damages award, and I guess the putative damages award too, but that doesn't tell us what the harm was necessarily. Well, so there are two points here. There's the question about probability and then the question of magnitude of the potential harm. And it's true that it wasn't quantified precisely, either of those, but certainly the probability. But that's in part because there was no evidence on the other side. We said, look, this defect gives rise to significant risk of bodily injury or death, and nobody contested that. That was effectively a joint issue, a trial. The whole dispute was about whether Michael Sloan had been told that there was a crack in the defect, and the jury didn't believe him on that point. And so I think that the district court found that it's undoubtedly the case that the potential harm in this case on this record was substantial. And I think that's enough. And if you look at the Supreme Court's decision in TXO, for example, or this court's decision in Asa Brandt, it didn't look at the potential harm that could have been suffered and then discounted for the probability or the likelihood that it might have manifested itself. But substantial can't be, and I forget whether it's the numerator or the denominator, but we just can't plug in substantial and then work out a ratio. We've got to put a number in there. So what do we do about that? Well, look, we can't get around the fact that it's necessarily an imprecise exercise. And that's one reason why Justices Thomas and Scalia departed from the entire project, is it's just not susceptible to principled application. Aren't we really looking here to see whether it shocks the conscience and that the ratios are merely guidelines to that end? Well, it shocks the conscience in relation to the state's interest in punishing and deterring. Right. And in that regard, I think the record shows that this dealer is a significantly large dealer with multiple locations. It does. And in that regard, is it significant that the punitive damages awarded are only equal to 25 similar auto sales? 25 similar auto sales. The damages from 25 equivalent sales would be about the damages that were awarded? Well, I mean, I think the relevant question is whether that is a factor that the jury could take into consideration in trying to figure out what is an appropriate number that will punish and deter this type of misconduct and prevent its occurrence or reoccurrence in the future. And it's just important to keep in mind that the jury here is given quite a bit of latitude in making that determination. There's a range. And the question is whether, you know, this court, of course, polices the range. And once you're outside the range, you run into problems. But if you're within the range, then the jury has the ability to pick a number that it thinks vindicates the state's interests and provides a sufficient deterrent and punishment. And I think that, you know, the reason I take issue with my friend on the other side, which is his position is you just shut your eyes to the potential harm that could have been suffered, is that that doesn't, I mean, first of all, it's been rejected by the Supreme Court and this court. The Supreme Court, in every one of its substantive due process cases in this area, it says over and over again, you look at the ratio, quote, this is what it said in State Farm, between harm or potential harm to the plaintiff. It said that in Philip Morris. It said that in Gore. It said that in Cooper. It applied that in TXO. This court has said the same over and over again. The Seventh Circuit, a month ago, said the same thing. I mean, that is the rule of law. And so what my friend is asking for is a radical, unprecedented expansion of an unenumerated substantive due process right. And not only has that position been squarely rejected, but it's been rejected for a very good reason. And that's the, it would severely undermine the state's interest in punishment and deterrence, where the state is not just looking at the outcome of a particular course of misconduct, it's looking at the wrongfulness of the misconduct. And the wrongfulness of the misconduct doesn't turn on what happens to arise after the conduct takes place. You look at the conduct at the time it occurred and whether the defendant was engaging in a course of conduct that could have given rise to serious injury. You have a very sympathetic ear on the point about that we have been a little bit too rigid on ratios, particularly post-Campbell. But our case law seems to require that. And it's really hard to undo. And so you're right. The Supreme Court has talked about potential harm. The Supreme Court has talked about all these things. But I kind of get back to the point that with our case law, which I think probably goes far, personally, how do we quantify it? How do we figure out, how do we put that in the equation and figure out what to do? I just need guidance. The first case I would look to is TXO. And the court there said, even if the ratio is not, you know, even if the potential harm, the actual value of the potential harm isn't 5 to 8 million, but more like 4 or 2 or 1. So it doesn't actually attempt to fix precisely what the potential harm is. The court says it's still within the realm of reasonableness. And I think you could do something very similar here. I mean, I wouldn't start with the question, what is the potential harm? Then you conduct the analysis. I would start instead with the presumption that the jury acted appropriately here, rationally, and then ask whether. Isn't that out the door when the district courts already reduced it by this amount? Well, I don't think it's out the door. Well, should the district court have said more clearly what was wrong with the jury's verdict? The district court doesn't, right? Often they do. We think the district court got it about 90% right. And then it just faltered at the very end of its analysis. And the mistake it made is that it looked at the ratio and it plugged in only the actual harm, not the potential harm. Didn't even consider the fact that the potential harm might have yielded a much smaller, perhaps even negative ratio. And then it thought its hands were tied under this court's cases as a result of that calculation. And we take issue with the calculation. We think it rests on an error of law. The district court's understanding that it could only take into account potential harm at the reprehensibility part of the analysis, the first factor, and not the ratio. And I think that's a mistake. It's a mistake that if you look at all of the Supreme Court's cases in this area, you will find it. Let me ask you about the... So getting away from the substantial harm, foreseeability of the harm, it's really the wrong number. Suppose we do apply our ratios, which we're required to do. Is the ratio from the combination of incidental damages and compensatory damages, or does the ratio only compensatory damages? And please address what opposing counsel said about that. I think if you were to say that potential harm doesn't matter, so I will answer this question on that assumption. Yes. And you're just looking... I think the right question is, what is the actual harm that was suffered? And I don't know that you get into the weeds and you look at, well, in this claim, given the instructions, you only look at the compensatory damages and the jury was required to ignore the other damages, the out-of-pocket damages that resulted because of this misconduct, this fraudulent misconduct. I just don't think there's any support for that. And I think if you look at the Supreme Court's cases, they talk about actual harm. They occasionally use the word compensatory damages in cases where there's no distinction between actual harm and compensatory damages. Here you have incidental damages, and so it's a little bit different. But I don't see why the logic of the Supreme Court's cases in this area would require that this court distinguish between the two under substantive due process principles. I think that is yet again asking for this court to expand an unenumerated substantive due process right in a way that has no grounding in the case law or in common sense. What exactly was included in incidental damages according to the way the court instructed the jury or whatever? I think it was towing costs and other costs apart from just fixing the actual... Okay. ...part, the defect that had been concealed. Okay. And so some of the other expenses that were incurred, which I think are also reasonably foreseeable expenses. Counsel, what ratios were upheld in this court's decision? Grabinski versus Blue Springs Forge Sales, and is that a comparable case? So I think it was a 27 to 1 collective ratio. There were a few different defendants, and they had different damages. I mean, one of them, it was 99 to 1. Another one was a different one. But collectively, it was somewhere in the ballpark of 27 to 1. And the court there, I just would emphasize, it didn't reduce the jury's award. It just affirmed it. And so it affirmed and allowed that full award to take effect. And it said, this is far from the constitutional line, 27 to 1. And I think it recognized that in a case involving similar facts, although there was no record evidence, to my knowledge, of grave potential harm like we have in this case, that even in that case, 27 to 1 was appropriate and far from the constitutional line. And so if you start with that baseline, this court's precedence, then I think, I mean, it requires rejection of my friend on the other side's position. And I think that even the jury's award is too stingy and too interventionist. We ask that the court please reinstate the full amount of the jury award and allow it to take effect. Thank you very much. If there are no further questions. Thank you, counsel. Mr. Donovan. May it please the court. On the issue of what the record shows about the defendant's knowledge of any potential danger, I refer the court to Mr. Sloan's testimony at the appendix 449, Mr. Naber's testimony in the appendix at 370 and 379. That is definitive. All of this court's cases post-Campbell have followed the single-digit ratio and tried to adhere to what Campbell instructed. Well, we have the racial discrimination case from Arkansas. I'm sorry, I can't think of the name quickly, but it certainly didn't go by single ratios. Correct. With $1 in nominal damages. Right. $500,000 or was it $250,000? I think it was $250,000. Yeah, $250,000. Final guess. Bryant versus Jeffrey Sands. Thank you very much. It is. And in that case, your honor, of course, there were no compensatory damages. There was no economic damages. There was nothing to compare it to. So they're comparing the non-economic damages that this man suffered from his acts. TXO and Asa Brant both focus on the likely harm and that's not present here. The shooting in the crowded theater example is a likely harm example where the TXO court quoted the West Virginia Court of Appeals. That is not present here. I would like to thank the court for the time and patience with me today. Thank you both for your arguments. Cases 19-1481 and 19-1602 are submitted for decision by the court and the court will be in recess for 10 minutes.